UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL W. KELLY,

       Plaintiff,

vs.

SAPPI FINE PAPER NORTH AMERICA
and SD WARREN COMPANY,

       Defendants.
_____/

Civil Action No.
04-CV-490

HON. BERNARD A. FRIEDMAN

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT and GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is presently before the court on cross motions for summary judgment. The issues have been fully briefed. As the court does not believe oral argument is needed, the court shall decide the motions on the briefs.

This is an employment discrimination action in which plaintiff alleges he was discharged because of his age and disability and in retaliation for filing a worker's compensation claim and for complaining about the age and disability discrimination. Plaintiff asserts claims under the Person's With Disabilities Civil Rights Act (PWDCRA), the Worker's Disability Compensation Act (WDCA), the Elliott-Larsen Civil Rights Act (ELCRA), and retaliation under ELCRA. Defendant denies any such discrimination and contends that it discharged plaintiff because he violated the company's safety rules.

The parties agree that plaintiff was seriously injured at work on January 11, 2004, when he became entangled in a paper machine roller. At the time of the accident, plaintiff was using

an air hose in an attempt to blow off a paper "tail" from the roller.  Plaintiff was hospitalized for several days.  Following an investigation, defendant concluded that plaintiff had acted "unsafely" by reaching too far into the machine.  At the end of January or in mid-February 2004,[1] defendant discharged plaintiff, ostensibly "because of the combination of Plaintiff's previous safety issues (MIOSHA citation and Bianci situation), Plaintiff's unsafe conduct on January 11, 2004; and, Plaintiff's failure to acknowledge that he had engaged in an unsafe act, and then trying to negotiate with Travers [defendant's managing director] about safety and his continued employment."  Defendant's Brief in Support of Their Motion for Summary Judgment, p. 9.

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Viewing the evidence "in the light most favorable to the opposing party," *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), summary judgment may be granted only if the evidence is so one-sided that a reasonable fact-finder could not find for the opposing party.  *See Anderson*, 477 U.S. at 248-50; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478-80 (6th Cir. 1989).  In other words, "[a] material issue of fact exists where a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could return a verdict for that party." *Vollrath v. Georgia-Pacific Corp.*, 899 F.2d 533, 534 (6th Cir. 1990).

Having reviewed the parties' briefs and exhibits, as well as the complaint and the other documents filed in this matter, the court is persuaded that defendant is entitled to summary

---

[1] Defendant's managing director, Gavin Travers, avers that he made the decision to discharge plaintiff during a meeting on January 27, 2004, with plaintiff and defendant's safety director, Steve Brenske.  However, this decision was first communicated to plaintiff by defendant's human resources manager, Steven Busch, on February 16, 2004.

judgment on Counts I (disability discrimination under PWDCRA), III (age discrimination under ELCRA), and IV (retaliation under ELCRA), but that Count II (worker's compensation retaliation) should proceed to trial.

As to Count I, there is no evidence from which a reasonable jury could find that defendant discharged plaintiff because he had, or was perceived as having, a disability. Plaintiff has not even demonstrated that he meets the statutory definition of "disability," which requires that he have a physical or mental characteristic that "substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job." M.C.L. § 37.1103(d)(i)(A). Plaintiff's deposition testimony on this subject was that his arm has substantially healed and that it causes him only minor limitations. Under these circumstances, this claim does not survive defendant's motion.

Plaintiff's age discrimination claim (Count III) is equally weak. At his deposition, plaintiff testified that he had no evidence that defendant discharged him because of his age. In his response to defendant's summary judgment motion, which specifically challenges the age discrimination claim, plaintiff makes no mention whatsoever of this claim. Under Fed. R. Civ. P. 56(e), plaintiff was required *in his response* to "set for the specific facts showing that there is a genuine issue for trial" as to his age discrimination claim. Only in an unauthorized "supplemental response" does plaintiff argue that the age discrimination claim should be saved based on the fact that defendant allegedly discharged other managers who were 50 years old or older. Plaintiff's "evidence" consists solely of his own deposition testimony to the effect that various supervisors, whom he assumed to be in their 50s, were "downsized" or "eliminated" or "told to retire." Plaintiff offers no evidence of the circumstances surrounding the discharge of these other employees and no

evidence to show that these other employees were similarly situated to plaintiff. Nor does plaintiff cite any cases or other legal authority in support of this claim. On this record, a jury could not find in plaintiff's favor on his age discrimination claim.

The court reaches the same conclusion as to Count IV, in which plaintiff alleges that defendant discharged him in retaliation "for filing complaints and seeking redress for complaints of age and handicap discrimination." At his deposition, plaintiff testified that never filed any type of complaint alleging age or handicap discrimination. As defendant correctly notes, plaintiff cannot make out a prima facie case of retaliation without showing that he engaged in such "protected activity." Additionally, plaintiff makes no mention of his retaliation claim in his response to defendant's summary judgment motion. This claim is deemed abandoned.

In Count II, plaintiff alleges that defendant discharged him "in direct retaliation for his Workers Compensation claim." Complaint ¶ 23. At page 1 of his summary judgment motion, plaintiff states that his complaint "centers on" this alleged violation. The facts regarding this claim are heavily disputed, and the court is unable to grant summary judgment for either party.

The legal standards applicable to this claim were succinctly summarized in *Chisolm v. Michigan AFSCME Council 25*, 218 F.Supp.2d 855, 873-74 (E.D. Mich. 2002), as follows:

> Section 418.301(11) of the Michigan Compiled Laws provides:
>
>> A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act.
>
> Mich. Comp. Laws Ann. § 418.301(11). In order to establish a prima facie case of retaliatory discharge, Plaintiff must prove that (1) he

4

asserted his right to workers' compensation benefits; (2) the Defendants knew that Plaintiff asserted his right to workers' compensation benefits; (3) the Defendants terminated Plaintiff; and (4) there was a causal connection between Plaintiff's assertion of his right to workers' compensation benefits and his termination. *Chiles v. Machine Shop, Inc*., 238 Mich.App. 462, 470, 606 N.W.2d 398 (1999) (discussing *DeFlaviis v. Lord & Taylor, Inc.*, 223 Mich.App. 432, 436, 566 N.W.2d 661 (1997)).

The *McDonnell Douglas* burden shifting approach applies to workers' compensation retaliation claims. *Chiles*, 238 Mich.App. at 470, 606 N.W.2d 398. Once a plaintiff establishes a prima facie case, the McDonnell Douglas approach shifts the burden to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Carden*, 156 Mich.App. at 211, 401 N.W.2d 273. Once the defendant has met this burden of production, the plaintiff "must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' " *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097 (citation omitted).

Plaintiff bears the burden of establishing a causal connection between the protected activity, i.e., the filing of a workers' compensation claim, and the adverse employment action. *Chiles*, 238 Mich.App. at 470, 606 N.W.2d 398.

In the present case, plaintiff has stated a prima facie case of worker's compensation retaliation. Plaintiff asserted a worker's compensation claim, defendant knew of the claim, and defendant discharged him thereafter. The evidence of a causal connection between plaintiff's assertion of the claim and defendant's decision to discharge him is strong enough to survive defendant's summary judgment motion. Plaintiff has identified other workers who behaved unsafely at work but who did not file worker's compensation claims in connection with that conduct and were not discharged.[2] Plaintiff also behaved unsafely (according to defendant) but, in contrast to these

---

[2] The first of these other workers, Vinod Gupta, misused a water hose in a manner that defendant found to be "a violation of the Company's Cardinal Rules surrounding safety." Defendant concluded that "[p]eople could have been killed because of your actions." *See* Pltf's

other workers, he filed a worker's compensation claim and was discharged. This evidence suffices to meet plaintiff's initial burden of producing some evidence of causation.

The burden then shifted to defendant to offer a non-discriminatory reason for its decision to discharge plaintiff. As noted above, defendant's reason is that plaintiff had had two "safety issues" in the past, that plaintiff's lack of attention to safety caused the January 11 accident, that plaintiff failed to accept responsibility for his unsafe conduct. Plaintiff has produced sufficient evidence of pretext to defeat defendant's summary judgment motion. In particular, there is a genuine issue as to whether plaintiff violated defendant's safety rules on January 11. Plaintiff notes, and defendant admits, that employees were expected to use air hoses to blow off paper "tails," and that employees routinely did so. Further, plaintiff has testified that Lynicka McCrary was performing the very same procedure, without success, when plaintiff attempted to assist by using the air hose in the same manner. A jury reasonably could find that plaintiff did nothing more than he and other employees had often done in the past – *and as defendant expected* – in using the air hose as he did. A jury might also reasonably find that defendant's characterization of the procedure as "unsafe" is pretextual, given that defendant did not discipline McCrary for engaging in the same practice.

A jury might likewise reject as pretextual defendant's characterization of plaintiff's

---

Ex. X. In response, Gupta received a written warning. *See* Dft's Ex.C-2. The second worker, Bobby Manzoor, failed to use fall protection in a manner that defendant found "violated a Cardinal Safety Rule that Sappi expects each of us to follow without any exception." Defendant concluded that Manzoor's violation "could have killed either of you [Manzoor or another worker]." *See* Pltf's Ex. Y. In response, Manzoor received a written warning. *See* Dft's Ex. C-2. The third employee, Jim Geisler, violated a company rule requiring him to wear a SCBA device, and he ignored a supervisor's repeated instructions that he put one on. *See* Pltf's Ex. Z. In response, Geisler received a one-day suspension. *See* Dft's Ex. C-2. The fourth worker, Lynicka McCrary, was – according to plaintiff – attempting to dislodge the paper "tail" using an air hose in the same manner as plaintiff, moments before plaintiff's accident. McCrary was not injured, did not submit a worker's compensation claim, and apparently was not disciplined.

work record as containing significant "safety issues." Plaintiff notes that just two days before the accident, defendant gave him a performance-based raise which placed him in the 99th percentile of the "band range" for plaintiff's position. In its most recent performance review, covering the period from October 2002 to October 2003, defendant gave plaintiff an overall rating of "exceeds expectation," the second-highest rating. In particular, plaintiff received this rating for his job expertise ("displays exceptional paper making knowledge and skills") and for problem solving and priority setting ("systematically approaches problems on the machine"). A jury might reasonably be suspicious of an employer's statement that it discharged one of its highest paid and longest serving employees on the grounds, in part, that he had a poor safety record.

A jury reasonably might also reject defendant's final explanation – "Plaintiff's failure to acknowledge that he had engaged in an unsafe act" – if it concludes that plaintiff did not engage in an unsafe act. As noted above, the evidence is disputed as to whether plaintiff was acting unsafely or whether he was simply following the standard, expected operating procedure of the company, when the accident occurred.

In conclusion, the court shall grant summary judgment for defendant on plaintiff's claims of handicap discrimination, age discrimination, and retaliation under ELCRA. Plaintiff's claim for worker's compensation retaliation shall proceed to trial, as there are genuine issues of fact regarding this claim. Accordingly,

IT IS ORDERED that plaintiff's motion for summary judgment is denied.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is

7

granted as to Counts I, III, and IV of the complaint, but denied as to Count II.

IT IS FURTHER ORDERED that the final pretrial conference in this matter shall take place on **February 9, 2006, at 12:00 noon at the United States Courthouse in Detroit, 231 W. Lafayette Boulevard.**

          /s/Bernard A. Friedman
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE
SITTING BY SPECIAL DESIGNATION

Dated: January 26, 2006
      Detroit, Michigan